MIAMI GROVE INC. *vs.* LICENSING BOARD FOR THE CITY OF BOSTON.

Suffolk.   October 9, 1942. — October 28, 1942.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*License.   Common Victualler.   Certiorari.   Waiver.*

The licensing board of a city, in determining what course of action it should pursue respecting a common victualler's license in view of its findings that lack of proper supervision of the licensed premises and of the conduct of the licensee's business was continuous to the time of hearings by the board and that the licensee was "still conducting" the business in an improper manner, properly considered occurrences on

the premises over six months before the issuing of the license and the fact that the licensee previously had been warned officially of misconduct and lack of supervision there.

A licensed common victualler who, after receiving notice from the licensing board to appear before it in the matter of violation of the drug laws on the premises which occurred before the issuance of the license, participated fully in several hearings before the board respecting that matter and also the matter of improper conduct of the business through lack of proper supervision during the term of the license without making any objection as to the conduct of the hearing, waived the absence in the notice of specification of the later improper conduct.

A contention, that the return and an extension of the return of a board in certiorari proceedings did not contain any specific facts to support its conclusions, was untenable, the board's findings of fact as shown by the return and by the extension of the return not being subject to review or revision, and no error of law therein being disclosed.

PETITION, filed in the Superior Court on April 13, 1942, for a writ of certiorari.

The case was heard by *Collins*, J.

*N. H. Kolodny*, for the petitioner.

*G. R. Farnum*, for the respondents.

DOLAN, J. This is a petition for a writ of certiorari brought against the licensing board of the city of Boston to quash the revocation by the respondent members of said board of a license issued by them to the petitioner to carry on business as a common victualler on certain premises in Boston. The petition was filed in the Superior Court and, after hearing, the judge entered an order in effect dismissing the petition.

The relevant facts disclosed by the respondents' return as later extended may be summarized as follows. On December 15, 1941, the license in question was issued for the year 1942 to the petitioner by the respondents, hereinafter referred to as the board, to be exercised on premises located at 388, 388A Tremont Street and 156 Castle Street, in Boston. On March 3, 1942, a written complaint or report was made to the board by police authorities, "charging violations of the drug law by sales on the . . . [premises involved] of Marihuana cigarettes between the dates of April 29 and June 4, 1941, four sales by . . . [an] assistant manager in charge, and seven other sales by . . .

[one] in charge of the orchestra." This complaint alleged that these employees of the petitioner "pleaded guilty to said charges before the Federal Court on January 6, 1942, and that jail sentences were thereupon imposed." The complaint also alleged that these employees were indicted by a Suffolk County grand jury for conspiracy on the licensed premises to obstruct justice by intimidating witnesses in a vice case, and that they were found guilty by a jury on October 6, 1941, and sentenced to the house of correction. These facts were unknown to the board when it issued the license in question to the petitioner.

On March 4, 1942, the board notified the petitioner in writing to appear before it at 11 A.M. on March 12, 1942, in the matter of "Police Report for Violation of the Drug Law — Sales of marihuana cigarettes by employees on licensed premises." The hearing was held at the time fixed. The petitioner was represented by counsel, and was afforded a full and complete hearing, with the right to cross-examine the witnesses who appeared in support of the complaint and to examine such witnesses as it desired to produce. At the conclusion of the hearing the board took the matter under consideration. On March 13 the petitioner's manager of record appeared before the board and requested to be heard. His request was granted and he was fully heard. He availed himself of the opportunity "of testifying to any aspect of the matter and to the conduct of the business and the supervision of the premises." On March 16 the board, "being satisfied that the matters charged in the complaint had been established by satisfactory proof and that the petitioner had conducted and was conducting its business in an improper manner, unanimously voted that its said Common Victualer License be revoked as of March 25, 1942," and notified the petitioner in writing of its action under date of March 16, 1942.

On March 18, 1942, the board granted the petitioner's request for further hearing to enable it to present further evidence and to afford its counsel an opportunity to be further heard. After hearing, the board again took the matter under consideration. On March 20 the board voted

to reopen the case and to grant a rehearing thereof on March 23, 1942, at a fixed time. A hearing was had at the time fixed, and opportunity was afforded the petitioner to examine fully and cross-examine the witnesses who testified in support of the complaint "and the character of the management and the conduct and supervision of the business." No objection or complaint was made by the petitioner during the hearing concerning the manner in which it was conducted "in any particular whatsoever." On March 24 the board voted to extend the date upon which the revocation of the license was to become effective to March 30, 1942. On March 30, the board, being satisfied that the matters charged in the complaint had been established by satisfactory proof and that the petitioner had been and "was" conducting its business in an improper manner, voted that the date of revocation should become effective that day at midnight, and notified the petitioner of that action.

In the Superior Court the petitioner moved that the board be ordered to supplement its return by adding thereto a transcript of the evidence heard by it, or a statement by it of all the substance thereof, or by stating whether or not any evidence was presented to it to show that there had been any sale or sales of "marihuana or violation of any other drug law at any time from the issue of the license in question on December 15, 1941, and the dates of the hearings before the respondents, and, if so, what such evidence consisted of." In response to this motion the judge ordered that the board make a return disclosing the facts found by them including therein the dates of the alleged acts that they find to be improper, and denied the motion "otherwise." In compliance with this order the board filed an extension of its return, in which it found that eleven illegal sales of marihuana cigarettes were made on the premises during business hours "between April 29 and June 4, 1941, to wit on April 29, 30, May 3, 4, 7, 8, 10, 11, 16 (two sales) and June 4," on the first four occasions by the petitioner's assistant manager in charge, and on the last seven occasions by the leader of the restaurant orchestra.

with the coöperation of the assistant manager in charge. The board further found that on June 11, 1941, these two persons, together with two others, conspired on the premises to obstruct justice in a vice case and that at the time of the commission of the foregoing offences, and at all times since to the time of the hearings, there was no necessary, proper, sufficient and responsible supervision of the premises and the conduct of the business. The board found "continuous lack" of proper supervision of the premises and that the petitioner had been conducting its business in an improper manner at the time of the commission of the particular offences before referred to, and that it was "still [so] conducting its business . . . at the time of the hearings" before the board. In connection with its finding of lack of proper supervision and improper conduct of the business by the petitioner the board stated that it took into consideration "the character of the establishment, its reputation, the type of its patrons, the nature of the locality in which the premises are situated, and the fact that the management had been officially warned on previous occasions of misconduct on the premises and lack of proper and adequate supervision thereof."

The petitioner has argued that all of the findings in the return of the board as extended that purport to state only facts that occurred before the license in question was issued must be disregarded, that the board was without authority to revoke the license except upon the grounds set forth in the formal notice of the hearing, and also that no facts are found in the return to support the conclusion of the board that the licensed business was still being conducted improperly at the time of the hearings.

We deem it unnecessary to decide whether the occurrences found by the board to have taken place prior to the issuance of the license for 1942, standing alone, would support the revocation of the license. It is sufficient to say that those events, as well as the fact that the petitioner had been warned officially on previous occasions of misconduct on and lack of supervision of the premises, were proper to be considered by the board, at least for the purpose of

determining what course of action it should take in view of its further findings that the "lack of necessary, proper, sufficient and responsible supervision of the premises and of the conduct of the business" was continuous, and that at the time of the hearings the petitioner "was still conducting its business in an improper manner."

The powers of the board in the matter of revocation of licenses issued by it are defined by G. L. (Ter. Ed.) c. 140, § 9, which provides, in part, that if "a licensee at any time conducts his licensed business in an improper manner, the licensing authorities, after notice to the licensee and reasonable opportunity for a hearing, may upon satisfactory proof thereof suspend or revoke his license."

It is manifest that in the instant case the petitioner was given reasonable opportunity to be heard. In fact it was given not one but four separate hearings, at three of which it was represented by counsel and had full opportunity to cross-examine witnesses called by the board and to present such evidence as it saw fit.

It is true that the formal written notice of the proposed hearing did not define any subject matter to be heard except that relating to violation of the drug law by sales of marihuana cigarettes on the premises. But the return discloses that the petitioner was fully heard not only as to that matter but also with relation to the supervision and conduct of the business during the term of the license in question, since the board found specifically that the petitioner's manager had been "accorded a full and free opportunity, of which he availed himself [at the second hearing], of testifying to any aspect of the matter and to the conduct of the business and the supervision of the premises." Following that hearing the board found that the petitioner "had" conducted and "was" conducting its business in an improper manner. The return discloses that at the fourth hearing like opportunity was given the petitioner and its counsel to examine fully and freely and cross-examine witnesses, with relation to the charges contained in the complaint, and to "the character of the management and the conduct and supervision of the business." The return also

discloses that at no time during any of the hearings did the petitioner complain of the manner in which they were conducted "in any particular whatsoever." In participating at the hearings in the matter of the inquiry into continuances of improper conduct and supervision of the premises during the term of the license without objecting, and particularly in those that took place after the board had voted on March 16 to revoke the license because the petitioner's business had been and was being conducted in an improper manner, we think that the petitioner must be taken to have waived the absence of specification of complaints of that character in the original notice. See *Phillips* v. *Suffolk Savings Bank*, 219 Mass. 597, 601; *Cohn* v. *Cohn*, 310 Mass. 126, 127, 128, and cases cited. In this respect the case is distinguishable from *Higgins* v. *License Commissioners of Quincy*, 308 Mass. 142, where the licensee did not appear at the hearing, and his license was revoked for a cause not stated in the notice, to which he had never been given an opportunity to answer.

With respect to the petitioner's contention that no specific facts are contained in the return to support the conclusion of the board that the licensed business was being improperly conducted at the time of the hearings, that is, during the term of the license, it must be assumed that this conclusion was based upon evidence presented to the board, which properly is not incorporated in the return. *Selectmen of Wakefield* v. *Judge of First District Court of Eastern Middlesex*, 262 Mass. 477, 480. The petitioner, however, made no motion for further extension of the return (see *Newcomb* v. *Aldermen of Holyoke*, 271 Mass. 565, 567) and the finding of fact under discussion is not subject to review or revision, the function of a writ of certiorari being to correct substantive errors of law by a judicial or quasi judicial tribunal which are not otherwise reviewable by a court; and the petitioner is not entitled to prevail unless the return shows on its face a defect as a matter of law so substantial in nature as to make it manifest that justice requires the proceedings be quashed in order to prevent a material wrong. *Whitney* v. *Judge of the District Court of*

*Northern Berkshire,* 271 Mass. 448, 459. *Dube* v. *Mayor of Fall River,* 308 Mass. 12, 14. We are of opinion that no such error of law is disclosed by the return of the board.

<div align="right">

*Appeal dismissed.*
*Exceptions overruled.*