JAMES C. BOND[1] *vs.* COMMISSIONER OF PUBLIC SAFETY.

Middlesex.    September 13, 1973. — November 6, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Private Detective.   License.*

Under G. L. c. 147, §§ 22-30, the Commissioner of Public Safety had sufficient legal cause to refuse to renew the license of a private detective who knowingly demanded from an employer compensation on the basis of false representations as to the amount of work performed by the detective or his employees for the employer. [537-541]

BILL IN EQUITY filed in the Superior Court on January 18, 1973.

The suit was heard by *Mason,* J.

*Robert H. Quinn,* Attorney General, *& Terence P. O'Malley,* Assistant Attorney General, for the Commissioner of Public Safety.

*Thomas C. Troy* for the plaintiff.

GRANT, J.    This is an appeal (G. L. c. 30A, § 15; G. L. c. 211A, § 10 [b] ) by the Commissioner of Public Safety (commissioner)[2] from a final decree of the Superior Court entered in a suit brought by the plaintiff under G. L. c. 30A, § 14. The decree set aside the commissioner's decision not to renew the plaintiff's license as a private detective (G. L. c. 147, §§ 22 through 30, as appearing in St. 1960, c. 802, § 1, and as subsequently amended) and ordered the commissioner to issue such a license to the plaintiff. By order of

---

[1] Formerly Walter Billings.

[2] The word "commissioner" as used in this opinion refers to an acting (or deputy) commissioner and to a commissioner, successively and interchangeably. Nothing turns on the identity of any particular individual who exercised the powers of the commissioner. See G. L. c. 22, §§ 1 and 5 (the latter as most recently amended by St. 1956, c. 713).

a single justice of this court the operation of that decree was suspended pending appeal. G. L. c. 214, § 22, as amended by St. 1948, c. 309. G. L. c. 211, § 4A, as most recently amended by St. 1972, c. 740, § 2. Rule 2:01 of the Appeals Court.

The written notice by which proceedings were initiated by the commissioner advised the plaintiff that a hearing would be held "on your license as Private Detective, because of your violation of Chapter 147, Section 28, as a result of . . . [a complaint] received from . . . [named individuals], in that you filed false reports on hours worked and failed to give your employer a full report of work performed." At the very outset of the hearing it became apparent from statements made and questions put by the lieutenant-detective of the State police who had investigated the complaint in question that both he and the commissioner were interested in determining whether the plaintiff had sent a former employer (named in the notice of hearing) a bill for detective services which misrepresented the number of hours of work performed by the plaintiff and his employees in the employer's behalf. There was substantial evidence which warranted findings that the plaintiff and his employer had agreed that the amount of the plaintiff's compensation would be determined primarily by the amount of time which should be spent by the plaintiff and his employees in performing services requested by the employer, and that the employer had paid approximately half the plaintiff's bill before making complaint to the commissioner. The plaintiff denied any wrongdoing in the respect suggested by the questioning, and both he and his counsel offered to produce records of the plaintiff which, they represented, were not present at the hearing but would identify the individuals who had worked with and for the plaintiff in the employer's behalf and would substantiate the number of hours worked by each person.

The hearing was subsequently reopened by the commissioner pursuant to a written notice to the plaintiff which was similar in all material respects to the one already described. The commissioner made it clear from his open-

ing remarks that he had reopened the hearing in order to introduce into the record certain evidence which had been obtained from interviews of former employees of the plaintiff who had been named by the plaintiff in a report submitted by him to the commissioner following the conclusion of the first day of hearing. That report was not offered in evidence, but it is clear from the questioning of the plaintiff and his former employees that the report contained representations made by the plaintiff as to the exact number of hours spent by him and by each employee on the work requested by the complainant.[3] There were sharp conflicts between the testimony of the plaintiff and that of the employees as to the number of hours (if any) worked by each on the case in question. It is sufficient for present purposes to say that there was substantial evidence on which the commissioner could have made an express finding that the plaintiff had knowingly sent his former employer a bill which demanded compensation for a large number of hours of work not performed.

The commissioner's decision on the matter of the renewal of the plaintiff's license[4] was rendered in a letter from the commissioner to the plaintiff dated December 18, 1972. The commissioner found that the plaintiff had falsified his records as to the hours of employment of his employees and had used those records as a basis for computing the bill in question. The commissioner ruled, in effect, that the plaintiff had thereby violated the provisions of G. L. c. 147, §§ 26 and 28, and declined to renew the plaintiff's license as a private detective.[5] The Superior Court ruled that there

---

[3] The plaintiff did not produce any records of the type which he and his counsel had earlier represented were available and would be produced for inspection by the commissioner.

[4] The parties appear to have proceeded on the assumption, as do we, that a license granted to the plaintiff at an earlier date continued in effect while the described proceedings were pending. See the second paragraph of G. L. c. 30A, § 13, as most recently amended by St. 1962, c. 179.

[5] The critical portion of the commissioner's letter reads as follows:

"Your failure to substantiate your record of payment to . . . [named employees of the plaintiff], and your failure to bring your payroll records with you and your

Bond *v.* Commissioner of Public Safety.

had not been a violation of either of the sections referred to and, as already stated, ordered the issuance of a license to the plaintiff.

We deem it unnecessary to decide the particular question entertained by the Superior Court. Despite the somewhat narrow scope of the notices of hearing given to the plaintiff (as to which see *Sullivan* v. *Municipal Court of the Roxbury Dist.* 322 Mass. 566, 577-578 [1948], and cases cited), it is clear from the record in this case that the central question thoroughly litigated before the commissioner[6] was whether the plaintiff's license should be renewed in view of the possibility that he had knowingly demanded compensation from an employer for work not performed in the latter's behalf. In these circumstances we construe the commissioner's decision (fn. 5) as an effort to articulate (a) a finding that the plaintiff had knowingly sent a bill to an employer which contained false representations as to the amount of work performed and (b) a ruling that such action constituted legal cause for refusing to renew the plaintiff's license. As there was substantial evidence (G. L. c. 30A, § 1[6], and § 14[8] [e]) to support such a finding, the question for decision is whether the commissioner's ruling was erroneous as matter of law.

General Laws c. 147, § 25 (as most recently amended by St. 1970, c. 43) provides that a license to conduct business as a private detective shall be for one year and that "[t]he

---

statement that you have no records . . . affords me reason to believe that you falsified your records as to hours of employment of your employees and used said records as a basis for computing your bill ($4,318.05 . . . ) to . . . [named employer] for services rendered.

"Such falsification of records is violative of Section 28, Chapter 147, (General Laws) as a unilateral act on your part and not that of your employees, and Section 26 of said Chapter that a bond required to be posted is . . . 'conditional upon the honest conduct of the business of the licensee . . .' notwithstanding the above violations, based upon the evidence and issues presented, I do not choose to exercise my right of discretion to grant or renew your license under Sections 23, and/or 25 (Chapter 147 Supra)."

[6] Without objection by the plaintiff. See *Miami Grove, Inc.* v. *Licensing Bd. of Boston,* 312 Mass. 318, 323-324 (1942); *Conley* v. *Director of Div. of Employment Security,* 340 Mass. 315, 319-320 (1960). Cf. *Higgins* v. *License Commrs. of Quincy,* 308 Mass. 142, 145-148 (1941); *Becker Transp. Co. Inc.* v. *Department of Pub. Util.* 314 Mass. 522, 526-527 (1943).

commissioner may annually renew and may at any time for cause, after notice and a hearing, revoke, any such license." The specific causes for revocation set out in the second paragraph of that section and in the second paragraph of § 28 are not stated to be exclusive, and when we move beyond them (*Woodbury* v. *Municipal Council of Gloucester,* 318 Mass. 385, 388 [1945]) to a perusal of the other statutory provisions (G. L. c. 147, §§ 22 through 30, as appearing in St. 1960, c. 802, § 1, and as subsequently amended) governing the conduct of the licensed occupation (*Fallon* v. *Street Commrs. of Boston,* 309 Mass. 244, 246 [1941]) we discern a distinct legislative concern with the honesty of one engaged in the business of a private detective. Thus, an individual applicant for a license must produce references who will certify that he "is honest and of good moral character" (§ 24); the resident manager of a corporate applicant must be of "good moral character" (§ 24); a license may not be granted to one who has been convicted of a felony (§ 25); an applicant must give the commissioner a bond "conditioned upon the honest conduct of the business of the licensee" (§ 26); a licensee may not knowingly employ one who has been convicted of a felony, and he must specifically inquire whether a prospective employee has been convicted of a felony or of any offence involving moral turpitude (§ 28); the making of certain false reports is subject to criminal penalties (§ 28).

In light of such provisions we have no hesitation in concluding that a private detective who knowingly demands or receives compensation by or as the result of sending a bill to his employer which contains false representations as to the nature or total amount of work performed by himself or his employees displays an essential dishonesty which is sufficient legal cause for the commissioner's revoking his license or refusing to renew it. Compare *Dugdale* v. *Board of Registration in Medicine,* 270 Mass. 65, 68-69 (1930). See *In re Berardi,* 23 N. J. 485, 491-495 (1957). It follows that the record in this case discloses no

error on the part of the commissioner in refusing to renew the plaintiff's license.[7]

The final decree of the Superior Court is reversed, and a new final decree is to be entered affirming the decision of the commissioner.

*So ordered.*

---

[7] The bill in equity in this matter did not raise (see G. L. c. 30A, § 14[2] and [8]), nor has the plaintiff argued (Rule 1:13 of the Appeals Court; *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 [1958]), any question with respect to the commissioner's having taken notice of untried criminal complaints (or indictments) against the plaintiff under G. L. c. 266, § 33, and c. 274, § 6.