DOMENIC F. IMPRESCIA *vs.* STATE RACING COMMISSION. February 2, 1978. 1. In deciding whether the commission's conclusion that the plaintiff had violated Rules of Horse Racing numbered 519 and 524 was supported by "substantial evidence" (G. L. c. 30A, §§ 1[6], 14), we must not only consider the laboratory reports and other evidence presented to the commission, as well as the reasonable inferences which could be drawn therefrom, but must also give due weight to the

commission's own experience, technical competence and specialized knowledge in the field of horse racing. G. L. c. 30A, § 14. *Bournewood Hosp. Inc.* v. *Massachusetts Commn. Against Discrimination,* 371 Mass. 303, 317 (1976). That field includes the manner in which racetracks are operated, the responsibilities imposed upon trainers and other persons permitted to use the facilities thereof, the security measures customarily taken to prevent unauthorized access to restricted areas thereon, and the practical difficulties involved in drugging a horse on the premises without the knowledge of its trainer. Applying those tests to the commission's determination that the plaintiff had violated rule 524 and assuming with him that knowing possession by him of the hypodermic syringes was a necessary element of that offense, we are satisfied in the circumstances that such possession was properly inferable from the evidence that the syringes were discovered in what appears to have been a restricted area of Suffolk Downs which was admittedly under his control. Compare *Commonwealth* v. *Rosa,* 4 Mass. App. Ct. 839 (1976), and cases cited, *S.C.* 372 Mass. 697, 698-699 (1977). Under those tests the commission was also entitled to find (a) that one of the syringes so discovered contained amphetamine residue, (b) that amphetamine had been administered to the plaintiff's horse before the race in question, (c) that the drug had been so administered by that syringe within the restricted area under the plaintiff's control, (d) that in all probability it was administered by a person authorized to be within that area, and (e) that the plaintiff was implicated in its administration, in violation of rule 519. 2. The plaintiff's further contention that the action should be dismissed as moot, as we understand it, is based on the automatic expiration of the suspended license at the end of 1976, notwithstanding the fact that injunctive relief granted by the Superior Court judge had rendered inoperative all but a fraction of the ninety-day suspension period. If the action is moot now for that reason, however, it was equally so in March, 1977, when it was heard and decided on the merits in the Superior Court. The record fails to disclose that the plaintiff raised any such question in that court, but reveals instead that in April of that year he adopted there a position diametrically opposed to the one he takes here by moving for a stay of execution of the judgment (which was granted for a twenty-day period) "[t]o *avoid* rendering the issue moot" (emphasis supplied) through the running of the suspension period while his appeal to this court was pending. We do not regard the contention of mootness now advanced as properly before us. *Young* v. *Mobil Oil Corp.,* 4 Mass. App. Ct. 805 (1976), and cases cited. We fail to see how the plaintiff could benefit by our ordering dismissal of the action on that ground in any event, as our doing so would leave the commission free to enforce its decision against him, by a resumption of the abortive suspension or a refusal to renew his license (see *Bond* v. *Commissioner of Pub. Safety,* 1 Mass. App. Ct. 536, 538 n.4 [1973]), in a manner incapable of effective judicial review. Compare *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298-299 (1975).

*Judgment affirmed.*

The case was submitted on briefs.

*Albert H. Russell, Jr., & Alfred Paul Farese,* for the plaintiff.

*Terrence P. O'Malley,* Assistant Attorney General, for the defendant.